UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| C.C., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 1:11-cv-1273 (AJT/JFA) |
| ) | |
| FAIRFAX COUNTY BOARD ) | |
| OF EDUCATION, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM OPINION

Plaintiffs, C.C., a minor, and her mother, Jennifer Click ("the parent" or "Click"), claim that the defendant Fairfax County Board of Education ("FCBE") failed to provide C.C. with a free appropriate public education ("FAPE") for the 2011-2012 school year, as required by the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. An administrative hearing was held on these claims, following which the Hearing Officer ruled against the Plaintiffs. In their appeal from that decision in this Court, the Plaintiffs contend that the Hearing Officer erred in concluding that the parent was not entitled to reimbursement for C.C.'s tuition expenses for the 2011-2012 school year at the Lab School of Washington, a private facility located in the District of Columbia where C.C. has been enrolled.

Presently pending before the Court are the parties' cross motions for judgment based on the administrative record [Doc. Nos. 18 and 22]. A hearing was held on these motions on April 13, 2012, following which the Court took the matter under advisement. The Court has reviewed the extensive record in this case and has evaluated the Hearing Officer's decision in light of the applicable law and the standard of review. Like many cases under the IDEA, this case revolves around the tension between a parent's laudable objective to provide her child

with the best possible environment within which to progress and the more narrowly defined obligation of a public education system. In that regard, and as discussed below, the FCBE is not required to provide C.C. with the best possible education but rather to provide a free public education that is "reasonably calculated to confer some educational benefit on a disabled child." Based on this standard, and upon consideration of the motions, the memoranda and exhibits in support thereof and in opposition thereto, the administrative record, and the arguments of counsel at the hearing on April 13, 2012, the Court must grant the FCBE's motion and deny Plaintiffs' motion.

## I. **BACKGROUND**

C.C. is a child with multiple disabilities who is eligible to receive special education and related services under three disability categories, Hearing Impairment ("HI"), Specific Learning Disability ("SLD"), and Other Health Impairment ("OHI"). Age thirteen, C.C. exhibits executive functioning problems, auditory- and language-based processing issues, and learning disabilities. As a young child, C.C. underwent medical treatment for cancer, which resulted in some of her impairments, including high-frequency hearing loss in both ears.

C.C. began attending school in the Fairfax County Public School system ("FCPS") in second grade. Part-way through her second-grade year (2006-2007), FCBE determined that C.C. was eligible for special education services under the Learning Disability program, which provided her with special education support services and speech/language therapy. In February of her third-grade year (2007-08), C.C. began attending Camelot Center, a FCPS elementary school that offered a hearing impaired program with smaller class sizes. During the spring of her fourth-grade year (2008-09), C.C.'s mother, concerned about C.C.'s difficulty reading, hired an educational consultant, Dr. Eric Levine, to work with C.C.'s educational team at FCPS to develop and implement an individualized education program ("IEP") specifically focused on

2

improving C.C.'s reading skills. By the end of C.C.'s fifth-grade year (2009-10), C.C.'s reading scores on standardized assessments were in the 5th percentile. Additionally, C.C. exhibited emotional problems during her fifth-grade year.

In July 2010, between C.C.'s fifth- and sixth-grade years, C.C.'s mother met with the FCPS IEP team; Dr. Levine attended the meeting as well. C.C.'s mother did not agree with the IEP that FCPS proposed for C.C. for her sixth-grade year, and C.C.'s mother withdrew C.C. from FCPS and enrolled her in a full-time special education program at Commonwealth Academy, a private school in Alexandria, Virginia. C.C. attended Commonwealth for her sixth-grade year (2010-11). The parties reached a settlement as to C.C.'s sixth-grade year which is therefore not before the Court.

In July 2011, between C.C.'s sixth- and seventh-grade years, C.C.'s mother met with the FCPS IEP team on two occasions, for a total of approximately five hours; Dr. Levine attended these meetings as well. At the second meeting, FCPS proposed an IEP which would include twenty hours per week of special education for children with learning disabilities in a self-contained setting, as well as six and a quarter additional hours per month of related services. It was the professional opinion of the education staff of FCPS that C.C.'s educational needs could be met through a combination of both placement in small self-contained special education classes for all of C.C.'s core academic subjects, such as reading and math, and placement in regular education (or "mainstream") classes permitting interaction with nondisabled peers in elective (e,g,, drama) and physical education classes. The FCPS IEP team recommended that for her seventh-grade year (2011-12), C.C. be placed at Irving Middle School. At Irving, within the student body of approximately 900 students, about 10 percent is identified as learning disabled, and C.C.'s core academic subjects – including reading and math – would be taught in self-contained special education classes having 6-12 students.

3

C.C.'s mother disagreed with the FCPS IEP to the extent that it involved C.C.'s placement in a school as large as Irving as well as the placement of C.C. in mainstream classes for any period of time. For those reasons, C.C.'s mother rejected the FCPS IEP proposal, contending that the FCPS "had failed to provide [C.C.] with a free appropriate public education ('FAPE')," and requested that FCPS place and fund C.C. at The Lab School of Washington ("LSW"), to which C.C. applied and where she had been admitted for her seventh-grade year.

Plaintiffs submitted a request for a due process hearing on July 29, 2011, and a three-day hearing was held before a Hearing Officer on September 26-28, 2011. During that hearing, the Hearing Officer heard testimony from 12 witnesses. Admin. Rec. 148-50. Counsel for the student presented five witnesses, including C.C.'s mother; Dr. Levine, admitted without objection as an expert in the field of special education; Ilene Weinbrenner, the head of the junior high school at the LSW, admitted without objection as an expert in the field of special education; Caroline Chang, the Director of Occupational Therapy at the LSW, admitted without objection as an expert in the field of occupational therapy; and Gretchen Kunz, a speech-language pathologist at the LSW, admitted without objection as an expert in the field of speech-language pathology. *See generally* Admin. Rec. 148-49.

FCPS presented seven witnesses, including Lillian Watkins, a Procedural Support Liaison with FCPS, admitted without objection as an expert in the field of special education; Meridith Muehleib, the program manager for therapy services (physical and occupational therapists) with FCPS, admitted without objection as an expert in the field of occupational therapy; Sheila Moore-Neff, an audiologist, admitted without objection as an expert in the field of audiology, Arlene Schmidt, a special education department chairperson at Irving, admitted without objection as an expert in the field of special education; Sally Martin, a speech-language pathologist at West Springfield Elementary School, within FCPS, admitted without objection as

4

an expert in the field of speech and language pathology; Dawn Clements, a procedural support liaison with FCPS, admitted over objection (by counsel for C.C.) as an expert in special education; and Margaret Moore, a school psychologist with FCPS, admitted without objection as an expert in school psychology. *See generally* Admin. Rec. 149-50.

On October 18, 2011, the Hearing Officer rendered a 14-page written decision, *see* Admin. Rec. 193, in which he found that C.C. suffers from multiple disabilities, and that she is eligible to receive certain special education and related services and requires such accommodations and services. The Hearing Officer further found that the July 22, 2011 IEP "provided [C.C.] the support to learn and progress academically in the least restrictive environment[,]" and "was reasonably calculated to provide C.C. with the necessary quantum of educational benefit required by law." Admin. Rec. 193 at 13.[1]

On November 22, 2011, Plaintiffs filed a three-count Complaint in this Court seeking: (1) declaratory and injunctive relief with respect to C.C.'s rights under the IDEA; (2) an order requiring the FCBE to reimburse C.C.'s tuition at the LSW for the 2011-12 school year; (3) an order requiring the FCBE to place and fund C.C. at the LSW for the 2011-12 school year and declare it to be her current educational placement under the IDEA; and (4) attorney fees and costs. *See* Compl. [Doc. No. 1] at 11. The parties agreed that no discovery would be taken in this matter and that the parties would proceed solely on the administrative record. *See* Joint Discovery Plan and Mot. for Sch. Order [Doc. No. 9], at 2. The parties filed cross motions for judgment on the administrative record on March 19, 2012, and this Court held a hearing on April 13, 2012, after which it took the motions under advisement.

---

[1] The record also reflects that the parties agreed as to "the description [in the IEP] of [C.C.'s] current level of functioning" and agreed that the "educational goals and objectives, and the necessary classroom accommodations [described in the IEP] were appropriate for [C.C.,]" Admin. Rec. 193 at 12.

5

## II. STANDARD OF REVIEW

"Actions authorized under [20 U.S.C. § 1415(i)(2)] are procedurally unique in that they are independent civil actions in which the district court considers the record of the state administrative hearing, as well as any new evidence offered by a party, and makes findings based on the preponderance of the evidence." *County Sch. Bd. of Henrico v. Z.P.*, 399 F.3d 298, 304 (4th Cir. 2005). The reviewing court should make an independent decision based on the preponderance of the evidence, but give due weight to the state administrative findings. *See Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1991). However, district courts are not to "substitute their own notions of sound educational policy for those of the school authorities which they review." *Hartmann ex rel. Hartmann v. Loudoun Cnty. Bd. of Educ.*, 118 F.3d 996, 1000 (4th Cir. 1997) (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982)). "Due weight" means that administrative findings "are entitled to be considered *prima facie* correct, akin to the traditional sense of permitting a result to be based on such fact finding, but not requiring it." *Id.* at 105. When factual findings are "regularly made," and thus entitled to a presumption that they are *prima facie* correct, the district court must explain any disagreements it has with or deviations it takes from those findings. *Z.P.*, 399 F.3d at 304 (*citing Doyle*, 953 F.2d at 105). The Court must also give due regard to the hearing officer's explicit and implicit judgments as to the credibility of witnesses. *Z.P.*, 399 F.3d at 306-07 (*citing A.B. ex rel. D.B. v. Lawson*, 354 F.3d 315, 327-28 (4th Cir. 2004)). After giving the administrative factual findings their proper weight, "the district court is then free to decide the case on the preponderance of the evidence." *Doyle*, 953 F.2d at 105 (citations omitted). The party seeking to overturn a hearing officer's decision bears the burden of proof in showing that the decision was erroneous. *Barnett v. Fairfax County Sch. Bd.*, 927 F.2d 146, 152 (4th Cir. 1991).

## III. APPLICABLE LAW

Under the IDEA, a child with disabilities is entitled to a FAPE designed by the child's school district to meet his or her personal needs. 20 U.S.C. § 1400(d)(1)(A). The FAPE must be "reasonably calculated to confer some educational benefit on a disabled child." *Shaw v. Weast*, 364 Fed. Appx. 47, 48-49 (4th Cir. 2010) (quoting *MM v. Sch. Dist. of Greenville County*, 303 F.3d 523, 526 (4th Cir. 2002)). While the FAPE must provide the least restrictive environment ("LRE") that is appropriate for the child, 20 U.S.C. § 1412(a)(5)(A), the IDEA does not require a school district to provide a child with the best possible education. *Hartmann v. Loudoun County Bd. of Educ.*, 118 F.3d 996, 1001 (4th Cir. 1997) ("the IDEA does not require the furnishing of every special service necessary to maximize each handicapped child's potential") (internal quotation marks omitted).

The IDEA requires that an "IEP Team," consisting of the child's parent, the child's teacher, a school district representative, and, where appropriate, the child, develop an IEP for the student, setting forth details on the implementation of the child's FAPE. 20 U.S.C. § 1414(d)(1)(B). The IEP contains statements about the child's functioning levels, goals, services to be provided, and criteria for future evaluations of the child's progress. *Id.* at § 1414(d)(1)(A). While a school district may not predetermine the placement of a child before developing an IEP, *Spielberg v. Henrico County Pub. Schs.*, 853 F.2d 256, 259 (4th Cir. 1988), the IEP must include "the projected date for the beginning of the services and modifications . . . and the anticipated frequency, *location*, and duration of those services and modifications." 20 U.S.C. § 1414(d)(1)(A)(i)(VII) (emphasis added); *AK v. Alexandria City Sch. Bd.*, 484 F.3d 672, 681 (4th Cir. 2007) (holding "as a matter of law that because it failed to identify a particular school, the IEP was not reasonably calculated to enable [the student] to receive educational benefits"). "When a state receiving IDEA funding fails to provide a FAPE, the

7

child's parent may remove the child to a private school and then seek tuition reimbursement from the state." *A.K.*, 484 F.3d at 679. "The parent may recover if (1) the proposed IEP was inadequate to offer the child a FAPE and (2) the private education services obtained by the parents were appropriate to the child's needs." *Id.* However, "[i]n evaluating whether a school district offered a FAPE, a court generally must limit its consideration to the terms of the IEP itself." *Id.* at 682. It is against this background that the Plaintiffs claim that FCBE failed to provide C.C. with a FAPE, and challenge the Hearing Officer's decision on both procedural and substantive grounds. Specifically, Plaintiffs claim that the Hearing Officer's decision was not "regularly made" and was based upon "several incorrect standards of law . . . ." *See* Pls.' Br. in Supp. of Mot. for Summ. J. ("Pls.' Br.") at 2-3.

### A. Plaintiffs' Challenge That The Hearing Officer's Decision Was Not "Regularly Made" And Thus Not Entitled to Deference

Plaintiffs claim that the Hearing Officer's decision was not "regularly made" and thus, not entitled to deference upon review by the Court. *See Z.P.*, 399 F.3d at 305. Plaintiffs identify two errors in this category: (1) the Hearing Officer "ignor[ed] evidence of C.C.'s progress at Commonwealth and [LSW]"; and (2) the Hearing Officer "omit[ted] any mention of the parent's experts and evidence." Pls.' Br. at 14-15.

When reviewing whether a Hearing Officer's decision was "regularly made," a court is to look at whether the Hearing Officer "conducted a proper hearing, allowing the parents and the School Board to present evidence and make arguments, and . . . by all indications resolved the factual questions in the normal way, without flipping a coin, throwing a dart, or otherwise abdicating his responsibility to decide the case." *J.P. ex rel. Peterson v. County School Bd. of Hanover County, Va.*, 516 F.3d 254, 259 (4th Cir. 2008). The focus of such an inquiry is "the process through which the findings were made." *Id.* (citing *Z.P.*, 399 F.3d at 305 ("Factual findings are not regularly made if they are reached through a process that is far from the

8

accepted norm of a fact-finding process."); *Doyle*, 953 F.2d at 105 ("[I]n deciding what is the due weight to be given an administrative decision under *Rowley*[, 458 U.S. at 206], we think a reviewing court should examine the way in which the state administrative authorities have arrived at their administrative decision and the methods employed.")). Based on these considerations, the Court concludes that the Hearing Officer's decision was "regularly made."

### (1) The Hearing Officer's Decision Adequately Treated Evidence of C.C.'s Progress at Commonwealth and LSW

Plaintiffs contend that the Hearing Officer "treat[ed] as irrelevant evidence of C.C.'s needs and progress at [LSW] in determining whether the July IEP was appropriate," Pls.' Br. at 15, and "ignor[ed] the substantial record evidence establishing that C.C. prospered in the full-time special education programs of both Commonwealth and [LSW] – in stark contrast to her suffering and decline at Camelot," *id.* at 16-17.[2] The hearing in this case was held on September 26-28, 2011. At the time of the hearing, C.C. had spent a full year (her sixth-grade year, 2010-11) at Commonwealth, and a year in the full-time special education program at Commonwealth, but only a few weeks at LSW. For these reason, there was limited information upon which the Hearing Officer could judge her progress at LSW. The evidence did include the results of CC's most recent tests dated September 7, 2011 in reading, math and written language, presented through the testimony of Dr. Levine, one of Plaintiffs' witnesses, but those

---

[2] Contrary to Plaintiffs' suggestion, the Hearing Officer did not rely on *Adams v. State of Oregon*, 195 F.3d 1141, 1150 (9th Cir. 1999) (cited in Hrg. Dec. at 11), to justify what Plaintiffs characterize as his "refus[al] to consider th[e] evidence" of C.C.'s progress at Commonwealth and LSW; he cited *Adams* in the context of applying the principle, well-established in this Circuit's jurisprudence, that it is not the responsibility of local hearing officers or courts to second-guess the professional judgment of the local educators who prepared the IEP. The Fourth Circuit explained precisely the connection between considering actual progress and deferring to local educators in *M.M.*, 303 F.3d at 532 (quoting *Hartmann v. Loudoun County Bd. of Educ.*, 118 F.3d 996, 1000 (4th Cir.1997)): "Courts should endeavor to rely upon objective factors, such as actual educational progress, in order to avoid 'substitut[ing] [our] own notions of sound educational policy for those of the school authorities which [we] review." See also *County School Bd. of Henrico County, Va. v. R.T.*, 433 F.Supp.2d 657 (E.D. Va. 2006).

test results suggested that she had regressed from earlier progress, at least in certain key areas. *See* Hrg. Tr. at 120:9-121:15 (in September 2011, C.C. scored at the 2nd percentile on the Woodcock-Johnson reading test, whereas on a previous administration of the comparable Kaufman test in Spring 2010, C.C. scored at the 5th percentile); and 121:16-122:1 (In September 2011, C.C. scored at the 1st percentile on the Woodcock-Johnson math test, whereas on a previous administration of the comparable Kaufman test in Spring 2010, C.C. scored at the 4th percentile). *But see id.* at 122:2-4 (in September 2011, C.C. scored at the 11th percentile on the Woodcock-Johnson written language test, whereas on a previous administration of the comparable Kaufman test in Spring 2010, C.C. scored at the 8th percentile). It is true, as Plaintiffs contend, that the Hearing Officer's decision does not make reference to C.C.'s progress at Commonwealth and LSW; but based on the record, the Court cannot conclude, as the Plaintiffs urge, that there was before the Hearing Officer "substantial record evidence establishing that C.C. prospered in the full-time special education program of both Commonwealth and [LSW] . . . ." *Id.* at 16-17. Accordingly, the Court rejects the Plaintiffs' argument that the Hearing Officer's treatment of evidence of C.C.'s educational achievement at Commonwealth and LSW was improper, and the Court will not remand this matter to the Hearing Officer for further consideration of that evidence.

### (2) The Hearing Officer's Decision Adequately Discussed the Parent's Experts and Evidence.

At the administrative hearing, the Hearing Officer heard conflicting opinions from Plaintiffs' witnesses on the one hand, and FCPS's witnesses, on the other. Plaintiffs contend that the Hearing Officer's written decision was "not regularly made" because the Hearing Officer "omit[ted] any mention of the parent's experts and evidence." Pls.'s Br. at 14-15.

The Hearing Officer's decision contains numerous citations to the testimony of the parent's witnesses. *See, e.g.*, Hrg. Dec. at 2 (citing to testimony of Dr. Eric Levine, the parent,

Ilene Weinbrenner, Christine Chang, and Gretchen Kunz); 4 (citing to testimony of Weinbrenner and Chang); 5 (citing to testimony of Levine and the parent); 6 (same); and 9 (citing to testimony of Levine, Weinbrenner, Chang, and Kunz). In fact, the length, number, and substance of the citations to the record testimony of the witnesses for the parent is comparable to that of FCBE's witnesses. *Compare id.* at 1-2 (citing to testimony of Sheila Moore-Neff); 2 (citing to testimony of Lillian Watkins and Meridith Muehlieb); 3-4 (citing to testimony of Arlene Schmidt); 5 (citing to testimony of Watkins and Schmidt); 6 (citing to testimony of Watkins, Muehlieb, Moore-Neff, Dawn Clements, and Margaret Moore); 7 (citing to testimony of Watkins, Schmidt; and Clements). The substance of the decision does not therefore support the Plaintiffs' contention that the Hearing Officer ignored the evidence, particularly in light his finding that "Dr. Levine and the witnesses who appeared from LSW [on behalf of the parent,] while familiar with their own educational programming for the student were admittedly not familiar with Irving nor were they familiar with the legal obligations imposed on [FCPS] and they had not worked much in a similar program." Hrg. Dec. at 9 (citing extensively to the testimony of all five of parent's witnesses). Measured against the applicable standards for a decision, the level of detail provided by the Hearing Officer in his decision is clearly adequate. *Z.P.*, 399 F.3d at 306. *See also, e.g., J.P. v. County Sch. Bd. of Hanover*, 516 F.3d 254, 261-62 (4th Cir. 2008) (explaining that "case law does not require an IDEA hearing officer to offer a detailed explanation of his credibility assessments," and that a hearing officer's findings are entitled to deference even if that opinion contained only short "summaries" of testimony and "no explanation of which evidence the hearing officer found to be most important or why the hearing officer was persuaded by the [school district's] evidence"); *Z.P.*, 399 F.3d at 306-7 (Fourth Circuit's IDEA jurisprudence "does not require the *hearing officer* to explain in detail its reasons for accepting the testimony of one witness over

that of another" and that "credibility determinations implicit in a hearing officer's decision are as entitled to deference . . . as explicit findings") (emphasis original); *A.B.*, 354 F.3d at 327-28 (reversing district court's opinion rejecting decision of hearing officer and noting that "the district court disregarded the ALJ's resolution of conflicting expert testimony. The ALJ carefully considered the views of [the student's] experts . . . implicitly finding them unconvincing while crediting the contrary views of [the school district's] experts."). For these reasons, the Court finds, based on its review of the Hearing Officer's decision, that the decision meets the specificity standards described by the Fourth Circuit, and the Court will not remand this matter to the Hearing Officer for a more detailed decision.

### B. Plaintiffs' Challenge That The Hearing Officer's Decision Was Based Upon Incorrect Standards of Law

Plaintiffs also contend that the Hearing Officer failed to apply the appropriate legal standards in four respects: (1) the Hearing Officer improperly gave deference to FCPS educators who "were not familiar with C.C.," *see* Pls.' Br. at 21; (2) the Hearing Officer erred in concluding that the parent "predetermined C.C.'s placement at [LSW,]" *see id.* at 25, and holding that such parental predetermination "should act to bar relief of her claim[,]" *see id.* at 24; (3) under the standard governing unilateral parental placements, the Hearing Officer improperly compared Irving with LSW, *see id.* at 27-28; and (4) the Hearing Officer improperly applied the "least restrictive environment" standard to LSW. *See id.* at 28-29.

### (1) The Hearing Officer's Treatment of FCPS Educators Was Appropriate.

Plaintiffs argue that the FCBE witnesses "were not familiar with C.C. and were not entitled to deference," Pls.' Br. at 21. However, the record demonstrates that FCPS educators had adequately familiarized themselves with C.C.'s educational functioning and needs in order to propose an IEP for C.C. that "was reasonably calculated to provide the student with the necessary quantum of educational benefit required by law." Hrg. Dec. at 13. What the record

12

reflects is that in preparation for and an in conjunction with developing an IEP for C.C., the FCPS educators conducted updated evaluations of C.C. in May and June of 2011. *See, e.g.*, AR 37 (audiology evaluation); 38 ("Report of Educational Evaluation"); 39 ("Speech and Language Evaluation Report"); 40 ("Occupational Therapy Evaluation"); 42 ("Report of Psychological Evaluation"). These evaluations included personal interaction with and observation of C.C. by the FCPS educators who performed them. *See, e.g.*, AR 38 at 1 (under "Assessment Techniques," includes "Observation"); 39 at 2 ("Carolyn presented as a friendly, cooperative student who readily engaged in conversation with the clinician."); 40 at unnumbered page 3 (under "Assessment Procedures Used," includes "Interview with parents/student/teachers/previous therapist" and "Environmental Observation"); 42 at 3 ("Behavioral Observations"). FCPS also gathered written evaluations by C.C.'s teachers for the 2010-11 school year. *See* AR 36 ("Speech and Language Program: TEACHER NARRATIVE – Elementary"); 41 ("Teacher narratives from Commonwealth Academy").

The record also reflects that the Plaintiffs' witnesses did not have significantly greater familiarity with C.C. than did the FCPS educators. For example, Dr. Levine testified that he had not seen C.C. for over a year, that is, that he had not seen her during the 2010-11 school year while she attended Commonwealth, and had not yet seen C.C. since she had started attending LSW. Hrg. Tr. at 97:5-10. Ms. Chang, the Director of Occupational Therapy at the LSW, who was offered by Plaintiffs and admitted without objection as an expert in the field of occupational therapy, had never evaluated C.C. herself, but had only "reviewed progress notes and evaluations that have been done by the Fairfax County Public Schools and at least one other outside group." *See* Hrg. Tr. at 330:9-331:7. Ms. Kunz, a speech-language pathologist at the LSW, who was offered by Plaintiffs and admitted without objection as an expert in the field

13

of speech-language pathology had evaluated C.C. once in August 2011, but never consulted C.C.'s prior educators at Camelot or Commonwealth. *See id.* at 406:16-407:6, 407:18-408:1.

The Hearing Officer's decision also evidences that he considered and adhered to the applicable legal standards in evaluating the conflicting testimony presented to him. In that regard, the Hearing Officer cited "Judge Hilton's painstaking remand analysis in *Doyle v. Arlington County School Board*, 806 F. Supp. 1253 (E.D. Va. 1992), *aff'd*, 39 F.3d 1176 (4th Cir. 1994)," in support of his determinations as to the appropriate weight to be given to the various witnesses. *Compare* Hrg. Dec. at 13 *with* Pls.' Br. (lacking any reference or citation to Judge Hilton's decision on remand in *Doyle*). In *Doyle*, "[t]he school system's witnesses . . . had not worked with [the student] on a daily basis[, but] they had studied the evaluation reports, talked with the parents and with [the] staff [at the student's current school], formally tested [the student] during several sessions, and observed [the student] several times." 806 F. Supp. at 1254. In contrast, "[t]he parents' educational witnesses had little first-hand knowledge of [the student] . . . . The witnesses were not the teachers or therapists who actually worked with [the student]." *Id.* One of the parents' witnesses "had never taught or tested" the student. *Id.* Another "had never worked directly with" the student." *Id.* And a third "had not seen [the student] in over fourteen months." *Id.* The Hearing Officer here reasonably concluded that "[i]n this proceeding, like in *Doyle*, the greatest weight must be accorded to the testimony of the public school staff because they had familiarized themselves with the student's needs . . . ." Hrg. Dec. at 13. The Court finds that the record before the Hearing Officer supports his determinations as to the weight to accord these witnesses, and that, under *Doyle*, the Hearing Officer's determinations were proper. Accordingly, the Court rejects Plaintiffs' contention that the Hearing Officer's determinations as to the weight to be given FCPS witnesses were not entitled to deference.

14

### (2) The Hearing Officer Appropriately Considered the Parent's Position During the IEP Process.

Plaintiffs argue that the Hearing Officer erred by (1) concluding that the parent "predetermined C.C.'s placement at [LSW,]" *see id.* at 25, and that such parental predetermination "should act to bar relief of her claim[,]" *see id.* at 24; (2) improperly comparing Irving with LSW, *see id.* at 27-28; and (3) improperly applying the "least restrictive environment" standard to reject C.C.'s placement at LSW, *see id.* at 28-29. As these three contentions are all advanced in support of their overall position that the Hearing Officer erred in denying reimbursement, the Court will consider them together.

The Hearing Officer found that "[b]ased on the totality of the administrative record, the parent has predetermined that no placement other than LSW would be appropriate for her child ...." Hrg. Dec. at 8. In support of this finding, the Hearing Officer referenced the following: (1) "even before the parent was first contacted by [FCPS] on April 27, 2011, to begin the IEP process, the parent had decided that the parent would not agree to Irving if it were proposed, saying the student would attend there 'over [her] dead body,'" *id.* at 7; (2) "when a spot at LSW opened up sometime in early or mid July 2011, the parent quickly committed to having the student attend there ... before FCPS had the chance to complete its IEP and placement proposal on July 22, 2011," *id.* at 8; (3) "[t]he parent herself on occasion has appeared to adopt an inappropriate optimization standard concerning the placement at LSW, describing it as 'a perfect fit,'" *id.* at 9; and (4) the parent subscribed to the view that "the student can learn only if provided with full-time, intensive special education," and "insist[ed]" that placement of C.C. at LSW is both appropriate and what C.C. "needs." *Id.* at 5.

The Hearing Officer's finding that the parent predetermined C.C.'s placement, without allowing the FCPS to first recommend an IEP, is fully supported by the record. *Compare* AR 11 at 22 *and* AR 12 at 24 (evidencing, as reflected in the incomplete draft of the IEP prepared

15

during the July 7, 2011 IEP meeting and the complete (but unsigned) IEP prepared during the follow-up July 22, 2011 IEP meeting, that before the July 22, 2011, the IEP team had not yet considered or made a decision as to whether C.C. should be placed at a public or private school). The record also fully supports the Hearing Officer's determination that the parent rejected the IEP proposed by FCPS because the parent believed that only LSW was an appropriate environment. It is important to note, however, that while the Hearing Officer found that the parent had predetermined C.C's placement, and could have denied reimbursement because of that predetermination,[3] the Hearing Officer did not deny reimbursement on that basis. Rather, the Hearing Officer denied reimbursement because he determined that the parent failed to show that the IEP offered by FCPS was not a FAPE under the IDEA. As the Hearing Decision explains at 13, "[t]he parent bears the burden to establish by a preponderance of the evidence that the [FCPS] failed to provide [C.C.] with FAPE concerning her request for tuition reimbursement and concerning the issues she has raised in this proceeding and she has not sustained this burden." The Court concludes that the Hearing Officer's decision in this respect was also supported by the record, and the Court, having reviewed that record, also concludes that the parent failed to prove, as required, that FCBE did not provide C.C. with a FAPE.

---

[3] As the Supreme Court explained in *School Committee of Town of Burlington, Massachusetts v. Department of Eduation of Massasachusetts*, 471 U.S. 359 (1985), the reimbursement provision of the IDEA, 20 U.S.C. § 1415(e)(3),

> operates in such a way that parents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk. If the courts ultimately determine that the IEP proposed by the school officials was appropriate, the parents would be barred from obtaining reimbursement for any interim period in which their child's placement violated § 1415(e)(3).

471 U.S. at 373-74.

The Hearing Officer also made findings concerning the IEP. Those findings include that under the IEP, C.C. would have received an educational program at Irving that was "in many material aspects . . . similar to the private day school placement that the parent insists is appropriate and that the student needs[,]" *id.*, including small, self-contained special education classes for all of C.C.'s core academic subjects, general education classes for C.C.'s physical education (for which FCPS and the parent agreed that C.C. did not require an adapted class) and an elective class. *See, e.g.*, AR 6. Additionally, the IEP, was "in certain material respects . . . superior. Importantly, the Irving placement allows the student to interact with her nondisabled peers." Hrg. Dec. at 5. Because of these comparisons between the IEP and the program at LSW, Plaintiffs also argue that the Hearing Officer acted improperly in denying reimbursement because the dispositive issue in the case of a unilateral parental placement is "whether the school system provided a FAPE, not whether the private program and public programs are 'in many material aspects . . . similar.'" Pls.' Br. at 27-28. As discussed above, the Hearing Officer rested his decision not on the parent's unilateral predetermination but rather on the substance of the IED and his determinations that FCBE provided a FAPE. *See* Hrg. Dec. at 5-6, 8-9, 12-13. To the limited extent the Hearing Officer did compare Irving and LSW in the Hearing Decision, that comparison was invited by the parent's position that Irving would not offer C.C. a self-contained special education environment comparable to LSW, which the parent viewed was "a perfect fit" for C.C. *See id.* at 9 (citing Hrg. Tr. at 225:1-226:10).

Similarly, the Plaintiffs overstate the Hearing Officer's consideration and application of the IDEA's "least restrictive environment" mandate. In this regard, Plaintiffs argue that tuition reimbursement was denied simply because Irving and LSW were similar and LSW did not provide "the least restrictive environment." But, as stated *supra*, the Hearing Officer's finding

17

that reimbursement was barred is based on the Hearing Officer's conclusion that FCBE offered a FAPE. And, as Plaintiffs concede, whether a placement offers the least restrictive environment, although not a "mandate" or requirement, may be considered by a hearing officer when evaluating the appropriateness of a unilateral parental placement. *See M.S. ex rel. Simchick v. Fairfax Cty. Sch. Bd.*, 553 F.3d 315, 327 (4th Cir. 2009) ("[T]he district court's consideration of [the private placement's] restrictive nature was proper because it considered the restrictive nature only as a factor in determining whether the placement was appropriate under the IDEA, not as a dispositive requirement.").

At its core, Plaintiffs' fundamental criticism of the Hearing Officer's decision is that the Hearing Officer did not find that C.C. "requires . . . a placement" in a "small full-time special education setting." Pls.' Br. at 28. But the Hearing Officer's first obligation was to evaluate whether FCBE offered a FAPE; upon so finding, the Hearing Officer had no obligation to examine the Plaintiffs' unilateral placement. In the end, as in other cases that have come before the Court, the parties' dispute reduces to a large degree to a philosophical and educational debate over "mainstreaming," with the parent and the Hearing Officer occupying different camps. *Compare* Pls.' Br. in Opp. to Def.'s Mot. at 15 ("[The parent's experts were absolutely clear that Irving, the latest attempt to mainstream C.C., would be inappropriate and harmful for her.") *and id.* at 18 ("Parents need not enroll their child in what the school system would consider the least restrictive environment.") *with* Hrg. Dec. at 5 ("[I]n certain material respects the FCPS' placement is superior. Importantly, the Irving placement allows the student to interact with her nondisabled peers.") *and* 13 ("The . . . proposed IEP also provided the student a regular education opportunity to promote her socialization skills and participate in activities with non-disabled students in certain areas . . . ."). But the issue before the Court is not which placement, Irving or LSW, would provide the best or even the more helpful or appropriate

18

setting for C.C.; it is simply whether the publically available education that C.C. has been offered has a sufficient degree of educational accommodation in light of C.C.'s disabilities to provide some educational benefit, or whether it is so deficient in that regard so as to entitle C.C. to an additional expenditure of public funds for a privately furnished alternative education. Based on the record before the Court, and after reviewing the Hearing Officer's decision and the reasons for that decision, the Court finds and concludes that C.C.'s placement at Irving in accordance with the proposed IEP would provide at least that level of educational benefit minimally required under the IDEA and that Plaintiffs are accordingly not entitled to receive reimbursement for C.C.'s placement at LSW.

## CONCLUSION

For the foregoing reasons, the Court concludes that the plaintiffs have not carried their burden to show that the IEP and FCPS's contemplated placement of C.C. at Irving would deprive C.C. of a FAPE and thus violate the IDEA. The decision of the Hearing Officer will therefore be affirmed, the motion for judgment filed by the defendant Fairfax County Board of Education will be granted and the motion for judgment filed by the plaintiffs will be denied.

An appropriate Order will issue.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
July 19, 2012